STATE

v.

Abel TAVARES.

No. 80–499–C.A.

Supreme Court of Rhode Island.

June 14, 1983.

Dennis J. Roberts II, Atty. Gen., Alan R. Tate, Asst. Atty. Gen., for plaintiff.

Mark L. Smith, Woonsocket, for defendant.

## OPINION

MURRAY, Justice.

This case comes before us on the defendant's appeal from a judgment of conviction in the Superior Court. The defendant, Abel Tavares, along with codefendants George Matera and John Clarke, were charged with the murder of Dennis Grundy. The jury acquitted Matera and found the defendant and John Clarke guilty of second-degree murder. John Clarke appealed, and we vacated his conviction because the trial justice committed reversible error in denying severance sought by Clarke. The defendant now appeals, alleging among other things,

that the trial justice erred in denying the defendant's motion for a new trial.

The facts of this ice-pick murder are contained in our opinion of *State v. Clarke*, R.I., 448 A.2d 1208 (1982). We reiterate only the most salient and relevant points. On the evening of January 13, 1979, the victim and his wife, Patricia Grundy, decided that they wanted two parked automobiles removed from their property. The man responsible for placing the cars there, John Clarke, was telephoned and told to remove the vehicles. Clarke arrived at the Grundys' residence accompanied by defendant and George Matera.

Clarke removed one vehicle and returned an hour and a half later for the second car. He was again accompanied by defendant and Matera, and the three entered the Grundys' home in order for Clarke to obtain a coat hanger to start the second car. The three then went outside to the car and were subsequently followed by the victim.

At this time the victim's two brothers, James and Arthur Grundy; his wife; and his sister-in-law, Karen Cochrane, were all socializing inside the Grundy home. After some time had passed, Karen looked outside to see her brother-in-law lying in the driveway with John Clarke on top of him. Arthur Grundy testified that he went outside to find his brother on his knees supported by Clarke. He also testified that defendant was behind the victim holding an ice pick. The defendant, Clarke, and Matera eventually fled the scene, leaving behind the victim, who had received five puncture wounds in his chest, side, and stomach.

A jury found defendant and John Clarke guilty of second-degree murder. After the trial, defendant filed a motion for a new trial. In it he alleged that two witnesses, previously unavailable, were now available to testify on his behalf. The defendant further alleged that the new testimony would probably produce a different result.

One of these witnesses was Robert Garganta. Garganta had given a statement to the police that incriminated John Clarke. Specifically, Garganta told the police that Clarke, in response to Garganta's question of "why he did it," had said that "he had done it because they had gotten into a fight." At the hearing on the motion for a new trial, Garganta testified that Clarke had told him that they could never prove that he did it because the ice pick would never be found. Garganta also testified that he saw an ice pick sticking out of Clarke's back pocket on the night of the murder.[1]

Garganta could not be located before or during the trial. A constable was unsuccessful in his attempt to serve Garganta with a subpoena although Garganta was eventually apprehended by the police after the trial.

The second witness defendant referred to in his motion for a new trial was the acquitted codefendant, George Matera. Matera had exercised his Fifth Amendment privilege not to testify during the trial. At the hearing on the motion, counsel for defendant claimed that Matera would testify that he and defendant had intended to break up a fight between the victim and John Clarke, but upon their arrival at the scene they found the victim already stabbed.

The trial justice, in denying defendant's motion for a new trial, opined that the posttrial availability of the evidence did not render it newly discovered within the meaning of Rule 33 of the Superior Court Rules of Criminal Procedure. He further decided that the proffered evidence was cumulative to defendant's testimony at the trial. We are now asked by defendant to declare that the trial justice committed reversible error by denying the motion for a new trial.

■ The standard for granting a motion for a new trial based on newly discovered evidence is well established in this state. *State v. Carsetti*, 111 R.I. 642, 306 A.2d 166 (1973). The evidence must actually be newly discovered since the trial. The defendant must have been diligent in attempting to

1. Garganta testified that Clarke stopped by his apartment on the night of the murder.

discover the evidence for use at the original trial. The evidence must not be merely cumulative or merely impeaching. The evidence must be material to the issue and be of the kind that would probably change the verdict at a new trial. *Id; see also State v. Bassett*, R.I., 447 A.2d 371 (1982). With these guidelines in mind, we now examine the case before us.

■ This court has stated that "[e]vidence is cumulative which * * * adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth of a different character, although it tend [sic] to prove the same proposition or ground of claim before insisted on, is not cumulative within the true meaning of the rule on this subject." *Zoglio v. T.W. Waterman Co.*, 39 R.I. 396, 404, 98 A. 280, 283 (1916).

After a review of the trial transcript and the transcript of the motion hearing, we are of the opinion that the proffered testimony of Robert Garganta was not cumulative.

The proffered evidence concerns John Clarke's failure to include defendant as a comurderer in his statement to Robert Garganta, and it concerns Clarke's possession of an ice-pick on the night of the murder. Conversely, defendant's testimony concerns what he observed in the Grundy's driveway on the night of January 13, 1979. Although both are offered to prove the same proposition, namely, defendant's innocence, we feel that the proffered testimony is evidence of a different character. Therefore we do not find it to be cumulative. Were the proffered testimony that of another witness who had observed what occurred in the Grundys' driveway, we would find it to be cumulative because it would be of the same general character as defendant's testimony.

We now consider whether or not the proffered testimony was newly discovered evidence even though it was not actually discovered after the trial.

■ We should first point out that the trial justice and the state correctly recite the holding in *State v. Carsetti*, 111 R.I. 642, 306 A.2d 166 (1973), when they state that any new evidence must actually be discovered since the trial. However, after a review of defendant's brief and after a reading of the caselaw concerning civil motions for a new trial under Rule 59 of our Superior Court Rules of Civil Procedure,[2] we have decided to modify our holding in *Carsetti* by requiring newly adduced evidence to be either newly discovered or newly available since the trial. We feel that a distinction between newly discovered evidence and newly available evidence is a matter of semantics, which should play no part in determining a defendant's right to a new trial, particularly when the evidence is unavailable through no fault of the defendant. *Cf. In re Ouimette*, 115 R.I. 169, 342 A.2d 250 (1975) (different standard applies to case where defendant, through no fault of his own, was unable to acquire evidence because of the prosecution's nondisclosure).[3]

■ Our decision today does not affect the applicability of the other prerequisites for a new trial based on newly discovered evidence. These prerequisites, set out in *Carsetti* and its progeny, must still be met in order for evidence to be considered newly discovered. In the present case we are satisfied that the defendant was diligent in attempting to obtain the evidence for use at the original trial. We are also persuaded that the proffered testimony was material and of the kind that would probably change the verdict at a new trial. In light of the above, we find that the trial justice should have granted the defendant's motion for a new trial.

**2.** See *Town of Glocester v. Lucy Corp.*, R.I., 422 A.2d 918 (1980) (under Super.R.Civ.P. 59 trial justice may grant a new trial only if he finds, among other things, that the newly discovered evidence was not available at the first trial).

**3.** In light of our decision concerning Garganta's proffered testimony, we need not determine whether or not Matera's invocation of the Fifth Amendment makes his testimony unavailable for purposes of the new-trial motion.

For the reasons stated, the defendant's appeal is sustained and his conviction vacated. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.